## Fischman, Appellant, *v.* Benefit Association of Railway Employees.

Argued October 2, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and KEIM, JJ.

reargument refused January 8, 1963.

*Samuel J. Goldstein,* for appellants.

*James B. Hecht,* with him *Thorp, Reed & Armstrong,* for appellee.

OPINION BY MR. JUSTICE KEIM, November 28, 1962:
This case involves three appeals from orders of the Court of Common Pleas of Allegheny County, wherein defendant's preliminary objections in the nature of demurrer were sustained and the complaints dismissed.

The case involves assumpsit actions in which plaintiffs, as named beneficiaries in alleged life insurance contracts with the defendant company, seek to recover the amounts of the policy upon the death of the persons insured.

It appears all of the applicants were members of the Furniture Club of Pittsburgh (hereinafter referred to as Club), a trade association, formed under the Nonprofit Corporation Law of the Commonwealth of Pennsylvania and composed of individuals who were representatives of furniture manufacturers, retail furniture dealers and their executive officers, and department store furniture executives.

The Club delivered a master application and data sheets to the defendant, said master application being executed by the President of the Club, L. E. Wolk, who was an insurance broker, and F. Cherne, signing for himself and his associate Rosol, the representative of defendant insurance company.

It is argued by the appellants that the appellees agreed with the Club that a group insurance contract, conforming with and subject to the master application

and data sheets would be issued, provided 75% of the total membership of the Club made individual applications for coverage. The individual applications were to be in writing, signed by the applicant, and were to contain the following information: "Name of Employee", "Date of Birth of Employee", "Date Employed", "Sex", "Race", "Insurance Class", "Beneficiary", "Address of Beneficiary", "Name of Employer" (in all cards the name "The Furniture Club of Pittsburgh, Inc." was typed in this blank), "Date Card is signed", and "Signature of Employee". The appellants also alleged that the Club was to retain the applications until the required 75% of the membership was enrolled.

In addition to the above negotiations, the defendant, at the request of the applicants, printed approximately 400 booklets entitled "Club Insurance Plan for Members of the Furniture Club of Pittsburgh, Inc.", and delivered them to the Club for the purpose of advertising the coverage contained in the master application for the purpose of soliciting individual applications from members.

Ross S. Freedman, one of the decedents, and husband of Selma S. Freedman, appellant, on May 8th, 1956, submitted his application to the furniture Club, together with his check made payable to the furniture Club in the amount of $48.03, a sum equal to a quarterly premium under the master application. On June 28th, 1956, Max Yahr delivered his application to the furniture Club, together with his check made payable to the furniture Club in the amount of $48.03, his beneficiary being Royal Bedding Company, Inc. Max Fischman forwarded his application to the Club on July 5th, 1956, together with his check made payable to the Club in the sum of $48.03, and named his wife, Ruth Fischman, as beneficiary.

Less than 75% of the members of the Club had submitted individual applications to the Club by September 15, 1956. The applications were to be retained by the Secretary of the Club until the required 156 members had enrolled.

On or about September 15, 1956, the furniture Club and its members were notified that defendant would not issue group insurance to the Club, or to its members, at which time the Club returned to all applicants the sums which each had delivered to the Club.

At no time did the Club transmit to the defendant, nor did the defendant, or anyone acting on its behalf, receive applications from individual members of the Club or payment in whole or in part of any purported premium for group insurance of any kind for the Club, or for any of its members. Ross S. Freedman died on January 27, 1958; Max Yahr died on September 21, 1957, and Max Fischman died on April 23, 1957.

The appellee denied the existence of any contract or contracts of insurance between it and the club and/or any member thereof, and further included under new matter, among other things, that it had never made or issued any written master or individual policies to the furniture Club, and that the alleged contracts of insurance upon which the appellants were bringing suit were unenforceable and invalid under The Insurance Company Law of 1921, P. L. 682, §317, 40 P.S. §440, which reads as follows: "Policies of insurance, made or entered into by any stock or mutual insurance company, may be made either with or without the seal thereof, and they shall be subscribed by the president, or such other officer as may be designated by the directors or trustees for that purpose, and shall be attested by the secretary or other designated officer, and, when so subscribed and attested, shall be obligatory on the company."

In their pleadings, the appellants admitted no premiums were made to appellee, that no individual applications were delivered to appellee, and that the decedents were notified many months prior to death that appellee would not issue insurance under this particular program. It is to be noted that those Club members that did submit applications and checks, delivered them to the Club and neither the application or check was turned over at any time to the appellee.

The case of *Munhall v. Travelers Insurance Co.*, 300 Pa. 327, 150 A. 645 (1930), properly interprets the statute and applies in this case. In the *Munhall* case, the plaintiff sued in assumpsit as the beneficiary of an alleged contract of life insurance. The husband had made written application, passed the medical examination, and delivered the application, doctor's certificate and premium check to the carrier. Plaintiff argued that the premium had been accepted and a policy executed by the carrier, but on learning of husband's death, the carrier would not deliver the policy. The demurrer to plaintiff's complaint was sustained by the trial court and in affirming, this Court, at pages 333, 334, said in part: "We are of opinion that in addition to what has been said as to plaintiff's inability to recover, a statute not referred to in the brief on either side in terms prevents oral contracts of life insurance in this State. This Act (Act of May 17, 1921, P. L. 682, article III, section 517, West's Penna. Statutes (Cumulative Supplement 1928), page 542, section 317), is a re-enactment of the provision of the Act of May 1, 1876, P. L. 53, 56. It provides: 'Policies of insurance, made or entered into by any . . . company, may be made either with or without the seal thereof, and they shall be subscribed by the president, or such other officer as may be designated by the directors . . . for that purpose, and . . . attested by the secretary, and when so subscribed and attested, shall be obligatory on the com-

pany' and its effect is that all contracts of life insurance must be in writing (a wise and salutary requirement to prevent fraud) that they shall be subscribed by the president of the company or some other designated officer and be duly attested 'and when so subscribed and attested, shall be obligatory on the company'. Under this language, a contract of insurance not in writing is not obligatory on the company. Section 410 of the Act of 1921 (West's Supplement, page 548), which stipulates that no policy shall be issued or delivered unless it contains certain uniform provisions there specified, clearly implies that all contracts of life insurance must be in writing. The State possesses the power to prescribe regulations for the conduct of the insurance business: Com. v. Vrooman, 164 Pa. 306".

Appellant attempts to shift the cause of action from one of assumpsit to one of trespass, and if there was a cause of action the shift could be made, but an action of trespass in this case is directly contra to the position taken by this Court in *Zayc v. John Hancock Mutual Life Insurance Co.*, 338 Pa. 426, 13 A. 2d 34 (1940). This case also recognized that life insurance contracts must be in writing in order to be actionable. In the *Zayc* case, the court in affirming the award of a judgment n.o.v. in favor of the defendant said: "Manifestly appellant's attempt in this manner to hold the insurer responsible in damages for the amount of a policy because of delay, and thereby to accomplish by indirection that which the law has persistently refused to permit to be done directly, in an action ex contractu, cannot prevail, unless, independently of statute or contract, a legal duty devolved upon the insurance company either to accept or reject the application for insurance within a reasonable time. It is fundamental that negligence and liability therefor cannot be predicated upon a state of facts which does not impose any legal duty".

There is no contract oral or written as a matter of law. The master application provides: "The insurance shall go into effect . . . provided the application shall have been accepted by the Benefit Association of Railway Employees and the first premium shall have been paid."

Neither applications or premiums had been turned over to appellee at any time. The parties agreed that 75% of the membership had to be enrolled, with first premiums paid, before the policy could be effective and from the pleadings, it is clear that none of the conditions were met by appellants.

The question of joinder of the additional defendant L. E. Wolk is moot since there is no cause of action between the parties in either assumpsit or trespass for the reasons stated herein.

Orders affirmed.